# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | | |
|---|---|---|
| **LEVI SPRINGER,** | ) | **Civil Action No. 7:12cv00336** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| **SGT. ADAMS, *et al.*,** | ) | **By: Pamela Meade Sargent** |
| **Defendants.** | ) | **United States Magistrate Judge** |

Levi Springer, a Virginia inmate proceeding <u>pro se</u>, brings this civil rights action under 42 U.S.C. § 1983, against various employees at Red Onion State Prison ("Red Onion"). His complaint, as amended, alleges that the defendants violated his rights under the Eighth and Fourteenth Amendments of the United States Constitution by causing Springer's criminal charges against another inmate to be dismissed, contaminating his food, conspiring to have him assaulted by other inmates, failing to provide him with adequate medical testing for food contamination and diseases, and placing him in five-point restraints.[1] Defendants Sgt. Adams, Officer Bentley, Correctional Officer Brinkley, Sgt. Collins and J.T. Gilbert have filed a motion to dismiss and a motion for summary judgment. Defendant Phillip Mullins has filed a motion to dismiss, and defendants Dr. Daniel Miller and Qualified Mental Health Professional ("QMHP") Grace Cleek have filed a motion for summary judgment.[2] Springer has responded to all of the

---

[1] Springer was granted permission to amend his complaint on December 26, 2012, adding defendant Dr. Miller, and bringing additional claims related to confinement in five-point restraints.

[2] By previous order, the court dismissed claims against defendants Glenda Tate, the County of Wise, U.M. Younce, and Officer Wright. (ECF Nos. 33, 55, 93.)

defendants' motions, making these matters ripe for disposition. Springer also has filed a motion for a temporary restraining order and preliminary injunction. These matters are before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). The undersigned now submits the following report and recommended disposition recommending that the court grant in part and deny in part defendants' motions to dismiss and motions for summary judgment, and deny Springer's motion for injunctive relief.

## I.

### A. Claim One:  Dismissal of Criminal Charges

In July 2011, Springer filed a criminal assault and battery complaint against inmate Damien Land for throwing feces on him in the recreation yard. The state magistrate found probable cause, and scheduled Land's arraignment for September 22, 2011. Ultimately, the criminal charges against Land were dismissed in October 2011 and, although Springer concedes that "nothing indicates why the charges were dismissed," he alleges that defendant Adams informed him that it was because prison officials failed to turn the video over to the Commonwealth. Springer alleges that Adams and Bentley refused to cooperate with the criminal investigation and case against Land in retaliation for another civil rights lawsuit that Springer had filed regarding unrelated claims.

### B. Claim Two:  Contamination of Springer's Food

Springer alleges that on May 10, 2012, Sgt. Collins asked him if he ate a regular or common fare diet and then exited the pod. Springer states that he

thought it was "unusual" that Collins would ask this, but did not think more of it. That evening, within minutes of eating his dinner tray, which had been delivered by Mullins, Springer claims that he developed a rash or hives on his forehead and nose and suffered from flu-like symptoms for approximately 30 minutes. He also noted that Mullins and Collins repeatedly looked in his cell window during that period. On May 15, 2012, Brinkley served Springer's dinner tray and, within minutes of eating, he again broke out in hives or a rash on his forehead and nose, as well as his chest, and felt flu-like symptoms for the rest of the evening. Springer states that, at this point, he "knew … Collins, … Mullins, [and] Brinkley. . .were lacing his food with something that was causing an allergic reaction." (Compl. 6, ECF No. 1.)

Springer states that he filed an emergency grievance on May 16, 2012, documenting the alleged food contamination incidents of May 10 and May 15, 2012, but defendant Gilbert determined that no medical testing for an allergic reaction was necessary. Because emergency grievances containing medical symptoms are placed in an inmate's medical file, Springer asserts that Dr. Miller was on notice of the allergic reaction. Springer also claims he asked Dr. Miller to test him for food contamination related to these incidents on multiple occasions, and told Dr. Miller that he had never had an allergic reaction to anything other than penicillin.

### C. Claim Three:  Conspiracy to Allow Assault and Failure to Protect

In May 2012, Institutional Investigator Bentley and Sgt. McQueen entered Springer's housing unit and began going cell by cell, speaking with the inmates.

Within hours of their leaving, inmates D. Blount and T. Brock, members of the Bloods gang, allegedly began calling out Springer's name and VDOC number, claiming that he was a snitch. They stated they had "paperwork" proving he was a snitch and showed Springer warrant information from the Wise County Sheriff's Department. Springer claims he notified Gilbert regarding this situation, and Gilbert assured Springer that there would be no problems during recreation. At some point thereafter, as Springer was being taken out for recreation, Collins told Mullins and Brinkley to make sure that Springer was placed in the far end of the recreation cages. Springer states that when he was placed in his recreation cage, he was unsure whether Blount and Brock were present, as "he had only seen them once before." (Compl. 9, ECF No. 1.) During recreation, Brock and Blount threw feces on plaintiff, which Mullins, Brinkley, Collins and Gilbert observed for approximately 15-20 minutes before approaching the cages. Afterward, a nurse evaluated Springer, because he had feces in his face and left eye. Springer also alleges that Dr. Miller refused to order blood testing for any disease that Springer may have contracted from having feces thrown in his face, including HIV or hepatitis.

### D. <u>Claim Four: Five-Point Restraints</u>

On September 18, 2012, Springer alleges that Gilbert questioned him regarding how many lawsuits he had filed against Gilbert. Thereafter, in retaliation, Gilbert instructed Collins to deny Springer showers and recreation until Springer "gets the lady from the attorney general's office off of his back." (Mot. 2, ECF No. 37.) At that point, Springer attempted to file an emergency grievance to document that he was being denied showers and recreation. Gilbert and Collins

later returned to Springer's cell and instructed him to turn around to be cuffed. While Springer's back was turned, defendant Collins opened the cell door and sprayed OC pepper spray ("pepper spray") on him, some of which also hit Collins in the face. Gilbert and Mullins then restrained Springer and brought him to QMHP Cleek. Cleek asked him whether he felt like harming himself, or someone else. Springer claims he said "no," but that he felt depressed because he was being refused showers and recreation. QMHP Cleek then approved the use of five-point restraints on Springer.

Springer claims that, while he was being placed in five-point restraints, Collins ripped Springer's pants and underpants off and dripped pepper spray from Collins's face and clothes onto Springer's penis and testicles. Also, an unknown officer allegedly pushed Springer's face into the mattress. After Springer was secured in the restraints, he claims Gilbert instructed Collins to deny him food, water and bathroom breaks. Springer alleges he was denied food, water and medication for more than 24 hours and bathroom breaks for more than 16 hours.

## II.

### A. **Motion to Dismiss**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. In order to survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must contain facts sufficient "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007). A claim is plausible if the complaint contains "factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). When considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true, and must draw all reasonable inferences in favor of the plaintiff. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

### B. **Motion for Summary Judgment**

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure should be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If the evidence of a genuine issue of material fact "is merely colorable … or is not significantly probative, … summary judgment may be granted." Id. at 249-50. The court's role is to determine whether there is a genuine issue based upon the facts, and "not . . . weigh the evidence and determine the truth of the matter…." Anderson, 477 U.S. at 249.

# III.

## A. **Claim One:  Dismissal of Criminal Charges**

Springer claims that Adams and Bentley violated his Eighth and Fourteenth Amendment rights under the Constitution by failing to adequately investigate the assault on Springer by inmate Land, and failing to turn over information and video content to the Commonwealth for prosecution, resulting in dismissal of the charges.  However, "[a] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973).  Therefore, Springer's allegations against Adams and Bentley do not allege any claim cognizable under § 1983, and I will recommend that the court grant the defendants' motion to dismiss as to Claim One.

## B. **Claim Two:  Contamination of Springer's Food**

(1) Motion to Dismiss

Springer sues defendants Brinkley, Gilbert, and Mullins for conspiring to contaminate his food with a substance that caused an allergic reaction, in an attempt to kill him. He also claims that Gilbert conspired to prevent the medical department from conducting a blood test to confirm an allergic reaction.  These defendants have filed motions to dismiss, arguing that Springer's allegations regarding food contamination fail to establish any link between his allergic reaction and the food he consumed, or between his allergic reaction and the defendants. I will recommend that the court grant defendants' motions.

Springer has failed to allege facts sufficiently linking the named defendants

to the alleged Eighth Amendment violation. Springer simply states that he suffered from a rash or hives and flu-like symptoms on two occasions shortly after eating a meal tray that was served by Mullins on the first occasion, and Brinkley on the second occasion. Besides stating, without explanation, that defendants knew he was allergic to penicillin, Springer gives no indication of how or when the defendants allegedly contaminated his food. Further, Collins's question to Springer regarding whether he ate a regular or common fare diet prior to meal time and Collins and Mullins checking the window of Springer's cell in a high security housing unit, do not plausibly indicate that these defendants contaminated his food. Thus, Springer fails to allege facts giving rise to a plausible claim that defendants contaminated or poisoned his food and caused his alleged injury. See e.g., West v. Atkins, 487 U.S. 42, 48 (1988); Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 658 (4th Cir. 1998).

Similarly, Springer fails to allege sufficient facts linking Gilbert to any constitutional violation. Beyond stating that he filed an emergency grievance with the medical department regarding his alleged allergic reaction, Springer provides no facts indicating how Gilbert "conspired" with any other medical personnel to prevent a blood test, or whether Gilbert, who is not alleged to be a medical doctor or nurse, had authority to either order, or forbid, a blood test. Moreover, Springer fails to allege any specific facts showing that Gilbert made an agreement with the "medical department" to deprive Springer of his constitutional rights. Springer's vague and conclusory allegations are not sufficient to state a § 1983 conspiracy claim. See Ballinger v. N. C. Agric. Extension Serv., 815 F.2d 1001 (4th Cir.), cert. denied, 484 U.S. 897 (1987) (an essential element in any claim of conspiracy to deprive the plaintiff of his constitutional rights is an agreement to do so among

the alleged co-conspirators); <u>Am. Tobacco Co. v. United States</u>, 328 U.S. 781, 810 (1946) (plaintiff must allege facts which show that the defendants shared a "unity of purpose or a common design" to injure the plaintiff); <u>Brown v. Angelone</u>, 938 F. Supp. 340, 346 (W.D. Va. 1996) (finding that where allegations of conspiracy are merely conclusory, without facts showing common purpose to injure plaintiff, complaint may be summarily dismissed).

Accordingly, Springer alleges no plausible § 1983 claim against defendants Brinkley, Adams, Collins, Gilbert and Mullins, and I will recommend that the court grant their motions to dismiss regarding Claim Two.

(2)  Motion for Summary Judgment

Springer claims that Dr. Miller's refusal to order blood tests related to the alleged food contamination violated his constitutional rights.  Dr. Miller argues that he is entitled to summary judgment because Springer had no serious medical need for such blood tests, and the court agrees.  An Eighth Amendment claim regarding medical care requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available.  <u>See</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994); <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976).  Objectively, the medical condition at issue must be serious.  <u>See</u> <u>Hudson v. McMillian</u>, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care).  Proof of an objectively serious medical condition, however, does not end the inquiry.  The subjective component requires "subjective recklessness" in the face of the serious medical condition.  <u>See</u> <u>Farmer</u>, 511 U.S. at 839- 40.

Springer's allegations that he broke out in hives or a rash and suffered flu-like symptoms on two separate occasions for a matter of hours do not establish the required "serious or significant physical or emotional injury" as a result of the alleged tampering with his food.  See Dawson v. Wolf, Case No. PJM-12-110, 2012 U.S. Dist. LEXIS 153558, at *5-6 (D. Md. Oct. 18, 2012) (Defendants' motion for summary judgment was granted regarding plaintiff's claim that his food was being "messed with," including correctional officers putting soap and a "black inky substance" in his food, resulting in plaintiff's mouth breaking out with bumps. The court found "no evidence that Plaintiff has suffered 'serious or significant physical or emotional injury' as a result of the alleged tampering with his food.") Accordingly, I will recommend that the court grant Dr. Miller's motion for summary judgment as to Claim Two. [3]

### C.  Claim Three:  Conspiracy to Allow Assault and Failure to Protect

(1) Motions to Dismiss

Springer claims Gilbert, Collins, Mullins, and Brinkley violated the Eighth Amendment to the United States Constitution by conspiring to have Springer assaulted during outside recreation, and failing to protect him from assault.  Taking Springer's allegations of fact as true, Springer sufficiently alleges a constitutional violation that withstands defendants' motions to dismiss.  Springer has alleged that,

---

[3] Dr. Miller also presents evidence that Springer made no complaint to him on May 10 and 15, 2012, regarding an allergic reaction to food contamination.  Dr. Miller states that "[u]nless a medical issue is brought to [his] attention, [he] cannot evaluate or treat the condition." (Mot. 3, ECF No. 87-1.)  In response, Springer contends that Dr. Miller must have known about the allergic reactions from the May 16, 2012, emergency grievance in his medical file.  However, this dispute of fact is not material to the court's determination that Springer fails to demonstrate any serious medical need.

prior to recreation, he notified Gilbert that inmates Blount and Brock were calling out his name and VDOC number, and claiming he was a snitch. Gilbert assured Springer that there would be no problems during recreation. Thereafter, as Springer was being taken out for recreation, Collins told Mullins and Brinkley to make sure that Springer was placed in the far end of the recreation cages. However, Springer alleges that after Mullins and Brinkley escorted him to the outside recreation cages, they "conveniently waited for something to happen in the form of an assault."[4] (Resp. 5, ECF No. 92.) Indeed, during recreation, Brock and Blount threw feces on plaintiff, which Mullins, Brinkley, Collins and Gilbert allegedly observed for approximately 15-20 minutes before approaching the cages. Following the attack, a nurse evaluated Springer because he had feces in his face and left eye.

The Eighth Amendment imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners," and deliberate indifference on the part of prison officials to a specific known risk of harm does state an Eighth Amendment claim. See Farmer, 511 U.S. at 833, 837. Springer has sufficiently alleged that the defendants knew of a substantial risk of serious harm, and consciously disregarded that risk by placing Springer in close enough proximity to inmates Blount and Brock to permit them to attack him with feces. Moreover, though they observed the attack occurring, the defendants did not intercede to stop the attack for 15-20 minutes. Thus, I will recommend that the

_____

[4] Springer also cites to another case he has filed, pending in this court, where a defendant, in his affidavit, refers to an incident involving throwing feces. However, it is not clear this affidavit refers to the same incident and, moreover, it has no bearing on the defendants' alleged conspiracy.

court deny the motions to dismiss filed by defendants Gilbert, Collins, Mullins and Brinkley regarding Claim Three.

(2) Motion for Summary Judgment

Springer claims Dr. Miller's refusal to test him for HIV or hepatitis following the feces incident violated his constitutional rights. Dr. Miller argues that Springer has failed to exhaust his administrative remedies regarding this claim, and, in the alternative, that Springer has failed to show that Dr. Miller was deliberately indifferent to a serious medical need. The undersigned concludes that Springer's claims do not state any plausible Eighth Amendment violation.

(a) Exhaustion

The Prison Litigation Reform Act ("PLRA") provides that a prisoner cannot bring a civil action concerning prison conditions until he has first exhausted available administrative remedies. See Nussle v. Porter, 534 U.S. 516, 524 (2002) (interpreting 42 U.S.C. § 1997e(a)). However, "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008). Defendant offers a copy of Operating Procedure 866.1, which sets out the procedure inmates in Virginia Department of Corrections ("VDOC") prisons must follow to exhaust administrative remedies in compliance with § 1997e(a). To satisfy the requirement of exhaustion, grievances must be appealed through all available levels of review prior to filing a lawsuit. Prior to submitting a formal grievance, however, the offender should demonstrate that he has made a good faith effort to resolve the issue informally, which is documented using an informal

-12-

complaint.

The parties dispute whether Springer fully exhausted his claims administratively. Dr. Miller provides evidence that Springer first filed a regular grievance regarding this incident on September 2, 2012, which was returned as untimely filed. In response to defendant's motion for summary judgment, Springer asserts that he exhausted his administrative remedies to the extent they were available. Springer contends that he could not file a timely grievance because Gilbert and Collins refused to give him an informal complaint form. Springer alleges that on May 15, 2012, June 25, 2012, and August 27, 2012, (emergency grievance numbers 052076, 050703, and 031227) he documented Gilbert and Collins's refusal to provide him with an informal complaint form. Springer further states that the grievance coordinator for Red Onion has failed to turn these emergency grievances over to the court.

Because Springer's response creates a material dispute of fact regarding whether Springer's attempt to exhaust his administrative remedies was frustrated by Gilbert and Collins, I will recommend that the court deny Dr. Miller's motion for summary judgment under § 1997e(a) as to Claim Three.

(b) Deliberate Indifference

To state a claim under the Eighth Amendment for inadequate medical assistance, the plaintiff must show that the defendant acted with deliberate indifference to his serious medical needs. See Estelle, 429 U.S. at 104. "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999). Instead, a

prison official evinces deliberate indifference to a serious medical need by intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. See Estelle, 429 U.S. at 104-05. Further, mere disagreement between inmate and medical staff as to diagnosis or course of treatment does not, in and of itself, state a constitutional violation. See Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

Dr. Miller's refusal to provide the specific procedure (i.e. blood test for HIV or hepatitis) that Springer thought he needed does not rise to the level of a constitutional violation because the facts alleged do not support a finding of deliberate indifference. Dr. Miller's evidence establishes that he did not ignore Springer's stated fear that he had been exposed to disease and provided the inmate with medical care for this complaint. Specifically, Dr. Miller performed a physical assessment and determined that Springer had stable vital signs and no fever. He also informed Springer that the risk of infection was very low, given the type of exposure Springer had experienced. In Dr. Miller's medical judgment, a situation with such a low degree of risk did not warrant either an HIV or hepatitis test. Moreover, while Springer states that he cannot know whether he has contracted either HIV or hepatitis because Dr. Miller refused to test for these diseases, he does not allege any sickness, or signs or symptoms of disease. With no evidence that Dr. Miller was deliberately indifferent to a serious medical need, I will recommend that the court grant Dr. Miller's motion for summary judgment on Claim Three.

#### D. **Claim Four:  Five-Point Restraints**

Springer's excessive force claim challenges both the initial decision to use the five-point restraints and his continued confinement in restraints for 23 hours. Springer alleges that QMHP Cleek violated his Eighth Amendment rights by authorizing the use of five-point restraints when they were not necessary.  Springer further alleges that Gilbert and Collins denied him food, water, medication and bathroom breaks while he was confined in five-point restraints.  Finally, he alleges that Collins dripped pepper spray on his penis and testicles.  Springer does not specify whether he is asserting a conditions of confinement claim or an excessive force claim under the Eighth Amendment.  Thus, considering Springer's specific factual allegations, this court will apply an excessive force analysis both to the initial decision to use restraints and his continued confinement in restraints.[5]  See Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996).

In the prison context, the Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned."  Williams, 77 F.3d at 761. To determine whether a prison official has violated the Eighth Amendment, courts must analyze "whether the prison official acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered or injury

---

[5]  The court notes that defendants Gilbert and Collins address Springer's allegations against them as a conditions of confinement claim.  (Mot. 7, ECF No. 65.)  To the extent that Springer alleges a conditions claim, this claim fails.  Springer does not allege that he was injured by the five-point restraints, suffered any serious health effects from the temporary lack of food, water or medication, or that he requested any medical treatment related to his confinement in the restraints.  See Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995) (Unlike excessive force, the conditions of confinement standard requires a showing of significant injury.).

inflicted on the inmate was sufficiently serious (objective component)."  Id.  When an inmate claims, as Springer does, that prison officials used excessive force in violation of the Eighth Amendment, he must meet a heavy burden to satisfy the subjective component.  See Whitley v. Albers, 475 U.S. 312, 320-21 (1986).  The inmate must demonstrate that the prison officials applied force "maliciously and sadistically for the very purpose of causing harm," rather than as part of "a good faith effort to maintain or restore discipline."  Id.  On the other hand, the objective component of an excessive force claim is less demanding, because "[w]hen prison officials maliciously and sadistically use force to cause harm,…contemporary standards of decency always are violated[,] whether or not significant injury is evident."  Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (internal citation and quotation marks omitted).  In addressing this component, the court considers whether the nature of the force applied was "nontrivial."  Id.  (noting that "[a]n inmate who complains of a [mere] 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim") (quoting Hudson 503 U.S. at 9.)

To satisfy the subjective component of an excessive force claim, an inmate must show that a prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991).  In the excessive force context, that state of mind is "wantonness in the infliction of pain."  Whitley, 475 U.S. at 322. In determining whether a prison official has acted with wantonness, the court may consider such factors as: (1) the need for the application of force; (2) the relationship between the need for force and the amount of force used; (3) the extent of the injury; (4) the extent of the threat reasonably perceived by the responsible officials based on the facts known to them; and (5) any efforts made to temper the

severity of a forceful response. See Id. at 321. "From such considerations inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." Id.

Although the court must view genuinely disputed facts in the light most favorable to the nonmovant at the summary judgment stage, the court "need not accept the legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Kloth v. Microsoft Corp., 444 F.3d 312, 319 (4th Cir. 2006) (omitting quotation). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007). To defeat a supported motion for summary judgment, the "opponent must do more than simply show that there is some metaphysical doubt as to the material facts…. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Id. (omitting quotation). In particular, where the record contains an unchallenged videotape capturing the events in question, the court must credit the plaintiff's version of the facts only to the extent it is not contradicted by the videotape. See Id.; Iko v. Shreve, 535 F.3d 225, 230 (4th Cir. 2008).

In support of their motion for summary judgment, Gilbert and Collins have

submitted supporting affidavits and video footage from the incident.[6]  This evidence, as set out below, provides critical information about the incident which Springer omitted from his account.

On the morning of September 18, 2012, Collins learned that Springer had covered his cell window, which is against prison rules.  Gilbert and Collins gave Springer numerous orders, which he ignored, to remove the covering from the cell window and back up to the door to be restrained.[7]  Collins received authorization from a nurse to use pepper spray on Springer, which was administered in a one-half second burst, striking Springer in the face.  Collins accidentally got some of the pepper spray on his face, so he left to decontaminate himself.  Springer also decontaminated himself by washing in a shower.  Springer was then escorted to the vestibule area of the pod, where he told QMHP Cleek that he had swallowed the handles of three sporks and intended to hurt himself.[8]  In the video submitted by defendants, Springer tells Cleek that his intention in swallowing the sporks was to kill himself.  Springer also states, "I'm tired of living like this" and "I am going to end up dying or going to the hospital."

---

[6] Defendants Adams, Bentley, Brinkley, Collins, Gilbert and Younce (who has been dismissed from the suit) filed a motion for summary judgment in response to Springer's amended complaint; however the amended complaint contained allegations only against defendants Gilbert and Collins.

[7] Springer pleaded guilty to a disciplinary charge related to refusing several orders to uncover his cell window and back up to the door to be restrained.  (Aff. Collins ¶ 8, ECF No. 65-2.)

[8] Springer pleaded guilty to a disciplinary charge related to swallowing the sporks.  (Aff. Gilbert ¶ 17, ECF No. 65-3.)

Cleek then ordered that Springer be placed in five-point restraints, to keep him from harming himself.[9]  Springer was disruptive and resisted the application of the restraints.  Multiple correctional officers assisted Collins and Gilbert in applying the restraints, but the defendants deny that any officers hurt Springer during the process, or pushed his face into the side of the mattress.  Officers removed Springer's socks, pants and underwear prior to applying the leg restraints, and a safety smock was placed over Springer's private area.  Defendants state there was no pepper spray on him during that time.  The video shows a number of correctional officers placing Springer in the five-point restraints.  While Springer screams loudly at times, including yelling "you are breaking my leg," the video shows the officers merely holding his arms and legs immobile in order to place the restraints.

Defendants contest Springer's allegations that he was denied bathroom breaks, food, water and medications while in restraints.  The log book submitted as evidence in the defendants' motion for summary judgment, shows Springer refused restroom breaks, water, and medications when offered, with the exception that the defendants did not release him for dinner on September 18, 2012, because he was being disruptive.[10]  Springer was placed in five-point restraints at 9:14 a.m. on

_____

[9] Gilbert states that five-point restraints is a method of restraining an offender where he is placed face up on the bed with both arms and legs restrained, and a strap over his chest.  It is used to assist prison staff in controlling unmanageable offenders in situations where there is substantial danger that the offender may injure himself or others.  An offender in five-point restraints is let up at mealtimes so he can eat and use the bathroom.

[10] According to the log book, following his placement in five-point restraints at 9:14 a.m. on September 18, 2012, Springer refused a bathroom break and meal at 11:35 a.m. and again at 12:35.  He refused his medication at 2:48 p.m.  Springer was not permitted to get up for a meal or restraint check at 4 p.m.  At 11:43 p.m. he was released for a bathroom break.  On September

September 18, 2012, and released on September 19, 2012, at approximately 8:20 a.m., after Cleek determined he was no longer a danger to himself or others.

Springer responded to the video submitted, stating that Collins obstructed the view of the camera while an unnamed officer pushed his face into the mattress. Springer also contests the log books, claiming that he was not causing a disruption or making threats to employees while in the restraints, and that he was denied water, lunch, dinner, medications and bathroom breaks on September 18, 2012.

(1) Initial Placement in Five-Point Restraints

Springer alleges that QMHP Cleek's authorization of five-point restraints constituted excessive force because they were not necessary. Springer claims that he told Cleek that he did not feel like harming himself or someone else, and he was not a danger to himself or anyone else. He states that another option, such as a stripped down cell, ambulatory restraints or camera monitoring cell would have been more appropriate.

QMHP Cleek asserts that she authorized the use of five-point restraints, not as punishment, but in order to protect Springer and others from harm. Cleek states that Springer's agitated behavior, his statement that he had swallowed three spork handles and his continuing threats to harm himself and others indicated the use of five-point restraints in her professional judgment, because he was in substantial danger of harming himself or others. The video shows Springer telling Cleek that his intention in swallowing the sporks was to kill himself. Springer also says, "I'm

---

19, 2012, Springer refused a bathroom break at 4:44 a.m., and at 8:08 a.m. he was released for a bathroom break.

tired of living like this" and "I am going to end up dying or going to the hospital." In his response to Cleek's motion for summary judgment, Springer admits that the video shows he was "clearly upset" but states, without support, that "mere threats of future harm or accusations of threats and harm are not enough to justify the use of [five-] point restraints." (Resp. 7, ECF No. 94-1.)

In this case, though Springer denies that he threatened to harm himself, or others, the video clearly shows otherwise. See Scott, 550 U.S. at 380 (where the record contains an unchallenged videotape capturing the events in question, the court must only credit the plaintiff's version of the facts to the extent it is not contradicted by the videotape). Considering Springer's obvious agitation, as seen on the video, and his statements that he had swallowed three sporks in an attempt to kill himself, and intended to try to harm himself, Cleek's authorization to place him in five-point restraints, for his own protection, constituted a good faith-effort to restore discipline. See Whitley, 475 U.S. 312, 320-21.

Accordingly, I will recommend that the court grant Cleek's motion for summary judgment as to Claim Four.

(2) Continued Placement in Five-Point Restraints

The use of five-point restraints to control an inmate is not per se unconstitutional. However, courts have found that, even when the initial restraint of the prisoner did not violate his rights, his continued restraint without legitimate purpose could state a constitutional violation. See Williams, 77 F.3d at 763; Sadler v. Young, 325 F. Supp. 2d 689, 702 (W.D. Va. 2004), rev'd on other grounds, 118 F. App'x 762 (4th Cir. 2005). "[When] the immediacy of the disturbance [i]s at an

end . . . the unnecessary infliction of continued pain throughout a prolonged time period clearly supports an inference that the guards were acting to punish, rather than to quell the disturbance." Williams, 77 F.3d at 765 (citing United States v. Cobb, 905 F.2d 784, 789 (4th Cir.1990) ("[P]unitive intent behind a defendant's use of force may be inferred when the force is not reasonably related to a legitimate nonpunitive governmental objective.") (quotations omitted)). Thus, application and/or continued use of five-point restraints on an inmate who does not currently pose any threat to security or discipline can be violative of the Eighth Amendment, even when that inmate does not suffer significant physical injuries. See Sadler, 325 F. Supp. 2d at 704; Davis v. Lester, 156 F. Supp. 2d 588, 594 (W.D. Va. 2001).

In this case, Springer was confined for approximately 23 hours. Defendants have presented evidence that he was offered opportunities to get up for meals and bathroom breaks during this time, which he refused. Gilbert avers that "[o]nce the inmate's disruptive behavior has subsided and it has been determined that the offender is no longer a danger to himself or others, the restraints are removed," and the defendants maintain that Springer continued to act combatively and threaten prison officials who attended while he was in restraints. (Aff. Gilbert ¶ 15, ECF No. 65-3.) Defendants contend that the log book submitted supports this, showing that Springer continued to be disruptive by "cursing staff, yelling, spitting at the door and window." (Aff. Gilbert ¶ 14, ECF No. 65-3.) In contrast, Springer asserts that he "was not causing a disruption or threatening any employee while in [five-]point restraints." (Resp. 6, ECF No. 81.) While defendants submitted video footage of Springer's initial placement into five-point restraints, they did not submit video of his ongoing confinement, or periods when he was either released,

or offered the opportunity to be released for food or a bathroom break.[11]

A review of the log book reflects that, at least once, Springer was let up from restraints for a bathroom break without incident, thus calling into question why defendants placed him back into restraints. Specifically, the log book indicates that his restroom break which occurred from 11:43 p.m. on September 18, 2012, until 12:29 a.m. on September 19, 2012, was completed "without incident" though Springer was "still negative towards staff" and "unresponsive when asked questions." (Aff. Gilbert ¶ 12, ECF No. 65-3.) Moreover, Springer denies that he continued to be disruptive throughout his confinement in restraints, and there is no video proving otherwise. Thus, whether defendants ensured that Springer was released as soon as he was no longer a security threat is in dispute. Accordingly, the court finds that a reasonable fact finder could conclude that the defendants, by leaving Springer in five-point restraints for 23 hours, applied force "maliciously and sadistically" in order to harm him, thus satisfying the subjective component of an excessive force claim. Whitley, 475 U.S. at 320-21.

However, to proceed, Springer must also satisfy the objective component of an excessive force claim. This "can be met by the pain itself, even if an inmate has no enduring injury." Williams, 77 F.3d at 762 (omitting internal quotations); see also Wilkins, 559 U.S. at 39 & n.2 (When considering the objective component, courts must look to the nature of the force used, and "whether it was nontrivial,"

---

[11] Springer claims that the defendants have failed to turn over a video of his release for a bathroom break in the "early morning hours" on September 19, 2012, as well as his complete release from restraints later that morning. (Resp. 5, ECF No. 81.) The record does not reflect whether these videos exist, or whether they would support Springer's version of events.

not the extent of the injury sustained.)    Springer contends that he suffered more than nontrivial pain or injury when he was confined in the five-point restraints.  He states he was forced to "live in human excrement" and that missing his medication caused a "substantial risk to his life."  (Resp. 9, ECF No. 81.)    However, he does not allege that he suffered any serious health effects from the temporary lack of food, water or medication, or that he requested any medical treatment related to his confinement in the restraints.  Defendants have provided an affidavit stating that a nurse assessed Springer upon his release, and "he voiced no complaints at that time."  (Aff. Gilbert ¶ 15, ECF No. 65-3.)

Consequently, the primary pain or injury would involve the pain associated with remaining in five-point restraints for 23 hours, with one bathroom break after approximately 14 hours.  Other courts in the Fourth Circuit have considered whether the pain that results from a lengthy confinement in restraints will satisfy the objective component of an excessive force claim.  In Sadler, the court denied judgment as a matter of law on five-point restraints for 48 hours, noting "any reasonable jury would find that completely immobilizing an inmate in five-point restraints for nearly [48] hours constitutes more than de minimus pain, even when the inmate is temporarily released ... and regardless of whether there is proof that the inmate suffered any lasting injury." 325 F. Supp. 2d at 702, 704; see also Card v. D.C. Dep't of Corrs., Case No. 2:00cv631, 2005 WL 2260167, at *6 (E.D. Va. Sept. 13, 2005).

The court finds that Springer has produced sufficient evidence of pain for the purposes of a motion for summary judgment.  While the inmates in Card and Sadler lay in five-point restraints for almost twice as long as Springer did, the

guards provided them with temporary breaks from their restraints. Springer claims that he received only one break from shackling, after 14 hours had passed. Thus, the court concludes that a reasonable fact finder could determine that Springer's pain was nontrivial. Accordingly, construing the facts in the light most favorable to Springer, Springer has stated a claim that, though defendants were initially justified in placing him in five-point restraints, by keeping Springer in five-point restraints for 23 hours, defendants used force maliciously and sadistically for the purpose of causing him harm. Therefore, I find that there is a genuine issue of material fact, and I will recommend that the court allow Springer to proceed to trial on his excessive force claim on the limited issue of whether the decision to let him remain in five-point restraints violated the Eighth Amendment.

Accordingly, I will recommend that the court deny defendants' motion for summary judgment as to Claim Four.

However, I will recommend that the court issue summary judgment in the defendant's favor with regard to Springer's claim against Collins regarding dripping pepper spray during the application of the five-point restraints. While Springer alleges he "screamed" when the pepper spray from Collins' clothes and face dripped on him during the application of the restraints, his account is contradicted by the video, which shows no evidence of any pepper spray dripping on Springer, and defendants deny this occurred. See Scott, 550 U.S at 380.

# IV.

Springer also has submitted a motion for a temporary restraining order and a preliminary injunction.[12]  In support of his motion, Springer claims that he has an infection which is not being adequately controlled by the type of cream that the doctor ordered and applied.  He states that the dosage of approximately three teaspoons is not enough to contain the spread of the infection, and the infection is "literally eating [him] alive."  (Mot. 2, ECF No. 51-1.)  Further, Springer claims that the defendants will not process a laundry request, and the laundry supervisor, Mr. Sexton, will not issue new laundry.   Springer also states that on January 10, 2013, Gilbert came to his cell door and attempted to cause a confrontation; however, Springer ignored him.  Finally, Springer states that he has not been released from segregation to a population environment, even though Springer claims he has not incurred any charges.

Because Springer's demand for interlocutory injunctive relief regarding an infection, laundry, Gilbert's "attempt to begin a confrontation" and his transfer out of segregation are not related to the claims in his underlying lawsuit, he is not entitled to injunctive relief on these issues.  See Omega World Travel, Inc. v.

---

[12] As a preliminary injunction temporarily affords an extraordinary remedy prior to trial, the party seeking the preliminary injunction must demonstrate that: (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tip in his favor, and (4) an injunction is in the public interest.  See Winter v. Natural Res. Defense Council, Inc., 555 U.S. 7, 20 (2008).  A showing of a strong possibility of harm is insufficient because the standard requires a showing that harm is likely.  See Id. at 22.  Each of these four factors must be satisfied before interlocutory injunctive relief is warranted.[12] Real Truth About Obama, Inc. v. FEC, 575 F.3d 342, 347 (4th Cir. 2009), vacated by, remanded by, cert. granted, 130 S.Ct. 2371 (2010), reaffirmed in part, remanded by, 607 F.3d 355 (4th Cir. 2010).

TWA, 111 F.3d 14, 16 (4th Cir. 1997) ("a party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint.") (quoting Devose v. Herrington, 42 F.3d 470, 471 (8th Cir. 1994)).

Accordingly, I will recommend that the court deny Springer's motion for injunctive relief.

## PROPOSED FINDINGS OF FACTS AND CONCLUSIONS OF LAW

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. The court should grant the motion to dismiss Claim One because it fails to state a claim upon which relief may be granted;

2. The court should grant the motion to dismiss Claim Two against defendants Brinkley, Adams, Collins, Gilbert and Mullins because it fails to state a claim upon which relief may be granted;

3. There is no genuine issue of material fact, and the court should grant summary judgment in favor of Dr. Miller on Claim Two;

4. The court should deny the motion to dismiss Claim Three against defendants Gilbert, Collins, Mullins and Brinkley;

5. There is no genuine issue of material fact, and the court should grant summary judgment in favor of Dr. Miller on Claim Three;

6. There is no genuine issue of material fact, and the court should grant summary judgment in favor of defendant Cleek on Springer's claim

regarding the initial application of five-point restraints contained in Claim Four;

7. These is no genuine issue of material fact, and the court should grant summary judgment in favor of defendant Collins on Springer's claim that he dripped pepper spray on him contained in Claim Four;

8. There are genuine issues of material fact, and the court should deny the motion for summary judgment in favor of Gilbert and Collins on Springer's claim regarding the continued application of five-point restraints contained in Claim Four; and

9. The court should deny Springer's motion for injunctive relief.

## RECOMMENDED DISPOSITION

For the reasons stated above, I recommend that the court grant defendants Adams's, Bentley's, Brinkley's, Gilbert's, and Mullins's motions to dismiss on Claims One and Twp (ECF Nos. 25 & 72) and deny defendants Gilbert's, Collins's, Mullins's, and Brinkley's motions to dismiss on Claim Three (ECF Nos. 25 & 72). I further recommend that the court grant defendant Dr. Miller's motions for summary judgment on Claims Two and Three (ECF No. 86) and grant defendant Cleek's motion for summary judgment on Claim Four (ECF No. 86). I also recommend that the court deny defendants Gilbert's and Collins's motion for summary judgment on Claim Four (ECF No. 64), regarding the limited issue of whether the decision to let him remain in five-point restraints violated the Eighth Amendment.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed finding or recommendation to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence to recommit the matter to the magistrate judge with instructions.

Failure to file written objection to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable Samuel G. Wilson, United States District Judge.

The Clerk is directed to send copies of this Report and Recommendation to all counsel of record and unrepresented parties.

DATED: This 16th day of August, 2013.

/s/ *Pamela Meade Sargent*

UNITED STATES MAGISTRATE JUDGE